MARTIN DAGGS v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant.—31 S. W. (2d) 769.

Division One, October 14, 1930.

556

*E. T. Miller, Henry S. Conrad, L. E. Durham* and *Hale Houts* for appellant.

*R. B. Kirwan* for respondent.

GANTT, P. J.—Action in count one charging false arrest and praying for damages in the sum of $15,000, and in count two charging assault and praying for damages in the sum of $50,000. The answer is a general denial. Verdict was for defendant on both counts of the petition. The court overruled the motion for a new trial on the first count, but entered an order granting a new trial on the second count "on account of error in the instructions." From this order defendant appealed.

On the afternoon of October 28, 1925, Eoff and Pyeatt, special officers in the employ of defendant, were examining cars of freight in defendant's yards in Kansas City, Missouri, to discover if the seal was broken. They had proceeded, one on a side, along a string of cars when the seal on a car containing eggs was found broken, a case of eggs missing and a case of eggs found in an empty car on an adjoining track. Eoff watched the case of eggs in the empty car while Pyeatt searched for the yard clerk. Presently the plaintiff appeared on the opposite side of the car loaded with eggs. Eoff arrested and detained him until Pyeatt returned, when he (Eoff)

searched plaintiff for weapons and found only a pocket knife, which he did not take from him. Plaintiff explained his presence in the yards by stating that he was seeking employment and had just interviewed the foreman of section crew No. 1, who said he had a full crew. He further explained that the foreman said that he might find employment with crew No. 2, and that he was on his way to seek employment from the foreman of said crew. The special officers interviewed the foreman of section one, who verified the statement of plaintiff. On returning to the car of eggs, Eoff proceeded to remove the case of eggs in the empty car to the freight house and knew nothing of subsequent events. Pyeatt was not satisfied with plaintiff's explanation of his presence in the yards, for plaintiff, when arrested, was a block east of the route to the foreman of crew No. 2. So Pyeatt started with him to a switch shanty. On the way plaintiff was shot.

Plaintiff testified that on the way to the shanty he walked in the rear of Pyeatt and in crossing a track his foot caught under the rail, which caused him to reach for the corner of a car and also for Pyeatt; that he missed the car, but in falling grasped Pyeatt, which forced him (Pyeatt) to his knees; that Pyeatt jumped to his feet, moved back, and began shooting at him.

Pyeatt testified that plaintiff sprang on him from the rear, threw his arms around him and struck and attempted to bite him; that he (Pyeatt) extricated himself and stepped backward facing plaintiff; that plaintiff came toward him, placing his hand under his overalls; that he then drew his revolver and commanded plaintiff to stop; that plaintiff continued toward him and that he (Pyeatt) then fired two shots, the first apparently having no effect, but the second causing the plaintiff to stagger and fall.

On request of defendant, the court instructed the jury as follows:

"If the jury find and believe from the evidence that at the time plaintiff was shot as shown by the evidence a special agent of the defendant named Pyatt had been attacked by the plaintiff, and that the said Pyatt believed that he was in imminent danger of bodily harm and shot plaintiff in self-defense or protection your verdict must be for the defendant on the second count of his petition."

By this instruction the court directed the jury on the issue of self-defense. The instruction did not require a finding that there was reasonable cause for Pyeatt to believe that he was in imminent danger of death or great bodily harm. For this reason it is erroneous. [State v. Bidstrup, 237 Mo. 273, l. c. 288, 140 S. W. 904; State v. Banks, 258 Mo. 479, l. c. 492, 167 S. W. 505; State v. Roberts, 242 S. W. 669, l. c. 674.]

On request of defendant, the court also instructed the jury as follows:

"The court instructs the jury that it was not necessary for the witness Pyatt to believe his life in danger to justify him in shooting plaintiff, but if you find and believe from the evidence that a reasonably prudent man under the same or similar circumstances would have been justified in believing that he was in imminent danger of bodily harm from an impending attack of plaintiff and that it was reasonably necessary to repel said attack, if any, by shooting and if you further find and believe from the evidence that plaintiff did attack said Pyatt, then said Pyatt had the right to shoot and was justified in shooting plaintiff and if you so find your verdict must be for the defendant on count 2 of plaintiff's petition."

This instruction also did not require a finding that there was reasonable cause for Pyeatt to believe that he was in imminent danger of death or great bodily harm. It proceeds on the theory that this is a negligence case. Furthermore, it directs the jury that if Pyeatt was in danger of "bodily harm," he had the right to shoot plaintiff. In other words, if the jury believed that Pyeatt was in danger of having his nose pulled, he had a right to shoot. Of course, if plaintiff was advancing and Pyeatt was in imminent danger of great bodily harm from plaintiff's pocket knife, or if Pyeatt had reasonable cause to believe that he was in such danger, he would be justified in shooting. But if there was no such danger, or if he did not have reasonable cause to so believe, he would not be justified in shooting plaintiff. And he would not be justified in using more force than was necessary to protect himself. [State v. Goodwin, 271 Mo. 73, l. c. 80, 195 S. W. 725; State v. Farrell, 6 S. W. (2d) 857, l. c. 859; State v. Caldwell, 231 S. W. 613, l. c. 614.]

It follows the judgment should be affirmed, and the cause remanded. It is so ordered. All concur.