STATE of Missouri ex rel. STATE HIGHWAY COMMISSION, Plaintiff-Respondent,

v.

BLUE RIDGE BAPTIST TEMPLE, INC., et al., Exceptions Gail M. Sanders, et al., Defendants-Appellants.

No. KCD 30482.

Missouri Court of Appeals, Western District.

April 7, 1980.

MANFORD, Judge.

This is a direct appeal by defendant landowner[1] from a jury award in condemnation. Respondent (hereinafter referred to as plaintiff) asserted its authority for the taking of a part of defendant's land in further development of Highway I–470. Commissioners were appointed, and these commissioners assessed damages of $55,-000.00. Plaintiff paid that sum into the court registry. Both parties filed exceptions. Upon trial, the jury awarded defendant $30,000.00 in damages. A motion for new trial was timely filed and overruled. The trial court ordered defendant to pay to plaintiff the sum of $25,000.00. The judgment is reversed and remanded.

On this appeal, defendant alleges three points. She first alleges that the trial court erred in permitting, over objection, the plaintiff to place in evidence a verdict in a prior condemnation case, thereby showing specific items of damages, including severance damages; and the prior verdict, having no probative value, created a false issue in the present case. Defendant, for her second allegation, alleges the trial court erred in permitting hearsay evidence (over her objection) by plaintiff regarding the development of other property along interstate routes, thus violating the stipulation regarding the hearsay rule, and that since this hearsay evidence went to the issue of damages or value of her property, defendant Gail M. Sanders was prejudiced by such error. As her final point of error, defendant claims the trial court erred in permitting plaintiff, through questions, comments and argument, to inject a false issue into the proceedings on the question of whether defendant had been fully compensated for all severance damages by the prior condemning authority. In this final point, defendant also alleges that such action denied her the right to have the jury determine severance damages as an element of compensation in the instant case. Because the

I. Lee Kraft, Kansas City, James L. Gillham, Independence, for defendants-appellants.

Bruce A. Ring, Chief Counsel, Jefferson City, Earl H. Schrader, Jr., Milton Skeens & Ronald V. Muller, Asst. Counsel, Missouri State Highway Commission, Kansas City, for plaintiff-respondent.

Before SOMERVILLE, P. J., and PRITCHARD and MANFORD, JJ.

1. Gail M. Sanders, appellant in this cause, will be referred to as defendant throughout this opinion. While the caption of this case shows Blue Ridge Baptist Temple, Inc. and others as appellants, this appeal involves only Gail M. Sanders as a party defendant.

first and third points are so similar, and because disposition of them turns upon the same question, points one and three are, for purposes of this appeal, taken up as a single alleged error.

Gail M. Sanders owned a tract of land consisting of 61.87 acres, situated within the corporate limits of Kansas City, Missouri and within Jackson County. At trial, the parties agreed that the date of taking was February 8, 1971, that the actual acreage taken was 8.87 acres and that the remainder consisted of 53 acres. In addition, the parties stipulated to the waiver of the hearsay rule as to proof of the purchase price on comparable sales, but both parties reserved the right to object to any specific comparable sale.

As the evidence establishes, the parties were in agreement regarding the fair market value of defendant's land. The price range was from $2,500.00 to $3,500.00 per acre. The dispute centered upon the question of severance damages. Plaintiff contended no severance damages resulted from the taking. Conversely, defendant contended such damages did occur.

In spite of the fact that reference to prior condemnation proceedings involving the same tract of land is not normally made, (because of the manner in which the record in this case was developed and by virtue of the errors alleged on this appeal) such reference is rendered necessary.

Approximately six months prior to the date of the taking (February 8, 1971) in the instant case, trial was had upon the taking of a part of defendant's land by the City of Kansas City. This prior taking was made for purposes of extending a local street, designated James A. Reed Road, generally northwardly and southwardly through defendant's land. This prior taking resulted in the division of defendant's land into two parts. These respective parts, being almost identical in size, were then located east and west of James A. Reed Road respectively.

Further reference to the prior condemnation case will be made as it becomes a point of contention in the trial of the instant case.

Following the proceedings of the city, plaintiff condemned a part of defendant's property by the taking of 8.87 acres for further development of Highway I–470. I–470, at this point, runs generally in an eastwardly and westwardly direction. The taking by plaintiff further divided defendant's land, and as a result of the intersecting of I–470 and James A. Reed Road, defendant's original tract was divided into four irregularly shaped tracts.

The instant case came on for trial on July 26, 1978, some seven and one-half years after the date of taking and approximately eight years subsequent to the trial involving the taking by the city.

Defendant landowner Gail Sanders testified regarding the ownership of the land. She stated that in her opinion, the land was worth $3,500.00 per acre, there was a prior easement on the land, the land had been platted for houses, and that by the taking of the 8.87 acres by plaintiff, the value of the land had been depreciated to $2,000.00 per acre.

An adjacent landowner, J. Winston Thompson, testified for defendant. He testified that he and the deceased husband of Gail Sanders had worked together in general development of the joining tracts of land and that the late Mr. Sanders had contemplated development of the defendant's tract for single family residences. He further testified that in his judgment, defendant's land prior to the taking was worth $3,500.00 to $3,800.00 per acre and that subsequent to the taking, the land was worth $2,000.00 per acre.

Further evidence for defendant included the testimony of an expert appraiser, Will Davis. Mr. Davis concluded that the remainder of the property, as a result of the taking and premised upon a formula of fair market value before versus fair market value after taking, had suffered severance damages in the sum of $33,968.00. He further testified that his opinion was premised upon comparable sales, a physical view of the property, a cost per lot for development formula and the fact that residential devel-

opment (in his opinion) tended away from abutment to interstate thoroughfares.

Defendant's only other witness was her son. It is through the testimony of this witness, the rulings of the trial court concerning such testimony and the argument of record directed to this testimony that the errors alleged on this appeal are brought into focus.

Elmer Sanders, son of the defendant, testified on direct examination that at the time of the taking, the highest and best use for the remainder of defendant's land was for residential development. He further testified that in his opinion, the loss per acre to the remainder was $1,500.00.

Upon cross-examination, he was asked again what the highest and best use was at the time of taking (February 1, 1971). He responded that it was for residential development. The following colloquy then took place:

"Q. All right, sir. And then immediately after that date did I understand you to say since that there was a change in the highest and best use?

A. I don't know what the best use for it is at this point.

Q. It no longer is suitable for single family housing?

A. I don't know what it is suitable for.

Q. Well, how about just the single family dwellings. Are you saying that it is not now?

A. I don't believe that it would be. I believe it would be hard to sell those lots back there. I just don't believe I can get a developer to buy that property under the circumstances.

Q. Okay. And did I understand you to say that one of those reasons was that the property is now after the taking—

A. Yes.

Q. —after 1971—

A. That's true.

Q. —is divided into one, two, three, into four parts?

A. That's right.

Q. All right, sir. And that is one of the reasons that you say that the property is no longer suitable for single family residential development?

A. I don't say that. I said that doesn't make it near as desirable because of the cost. I don't say that, maybe it would cost more money to develop those little triangular.

Q. And that has an effect upon the highest and best use of the ground?

A. That's true.

Q. And has brought about the change in the use?

A. Yes."

In addition to the foregoing testimony, the evidence revealed that defendant's land, although offered for sale, had not received any offers of purchase. The record also shows that as a result of the instant taking, the land per acre was decreased in value $1,500.00 per acre. Testimony included the additional cost of development per lot because of the now four smaller tracts and the fact that some of the lots would abut the new highway.

■ The evidence revealed defendant claimed the highest and best use of the property at the time of the city's taking was residential, and payment had been made by the city. The evidence also revealed the land suffered additional severance damages by the instant taking, an issue which the jury should have been entitled to decide independent of the false issue of double damages.

The cross-examination continued, and when asked if he had ever testified in a prior condemnation case involving the same tract, the witness stated, "I did not appear as a witness in James A. Reed Road."

A series of questions followed about the identification of the witness in the prior (city) condemnation case. The record reflects that typographical errors existed in the transcript. Finally, it was determined that Elmer Sanders did appear in the city

condemnation hearing, but as the record reflects, the witness did not equate the city proceedings (with a petit jury) to a trial such as the instant action.

The witness, when asked repeatedly about specifics of the city hearing, stated he did not deny making any of the referred-to statements, but he did not remember them. Plaintiff then was permitted to have identified (but plaintiff did not introduce it as an exhibit) the transcript of the city hearing.

Plaintiff asked witness Elmer Sanders the following question:

"Q. All right, sir. Now do you know what you received as compensation and as damages for that taking and for the items for which your mother was compensated, do you know?

An objection from defendant's counsel followed:

"MR. KRAFT: Just a moment. Just a moment. (Counsel approached the bench and the following proceedings were had:) MR. KRAFT: This defendant objects of it not being binding upon her, as Mrs. Sanders, and that it is incompetent and immaterial evidence as to what some other government agency may have allowed, the only issue being the condemnation action here for this jury as to what damages were occasioned by the highway, and not by some other taking."

After this objection, a conference with the court took place outside the presence of the jury. This conference reflected plaintiff's position that the record of the prior (city) hearing reflected the same claim for damages that defendant was seeking in the present case, and it was permissible to make use of the transcript for purposes of impeachment for prior inconsistent statements. The defendant objected, but the objection was overruled.

The trial court permitted plaintiff to narrate from the prior hearing transcript, but prohibited any reference to dollar amounts regarding value or to items of damage.

Plaintiff's counsel then asked the following question, which was followed by a subsequent objection and trial court ruling.

"Q. (By Mr. Schrader) Now Mr. Sanders, that being the case, and those being the facts, will you explain to the jury why and upon what basis you have made a claim, participating in the making of a claim on behalf of your mother, for a change of use in your entire tract of ground, have been paid for the same in full by the City, and that why you are then here today making the same claim for the same item of damages, and asking to be compensated for it again. Explain to the jury, if you can.

A. All right.

MR. KRAFT: If the Court please, the defendant objects to the question that no evidence as to what was paid, the question is 'paid in full,' and certainly is not binding upon Gail Sanders, and there is no evidence upon which to preface that type of cross-examination, to the question.

THE COURT: Objection is overruled. You may answer."

From this juncture in the trial, plaintiff assumed a position that defendant was seeking double damages for the remainder of her land. This position was repeatedly reflected in the remainder of the taking of testimony and most strongly in the final argument.

■ It is correct, as plaintiff argues, that the trial court has wide discretion in the cross-examination of witnesses, including the impeachment of a witness for prior inconsistent statements. See *State ex rel. State Highway Commission v. Davis*, 466 S.W.2d 172 (Mo.App.1971) and *Neavill v. Klemp*, 427 S.W.2d 446 (Mo.1968). That such is discretionary and rulings thereto will not be disturbed except for an abuse of that discretion, see *Hungate v. Hudson*, 353 Mo. 944, 185 S.W.2d 646, 157 A.L.R. 598 (1945).

■ There is no doubt that plaintiff was entitled to impeach witness Sanders, but the record herein reflects plaintiff was permitted, over objection, to exceed that area by the trial court. The record showed by its questions that plaintiff assumed a fact not in evidence. This fact was that defendant had been fully paid for all severance damages by the city in the prior hearing. This was error, see *Lonnecker v. Borris*, 245 S.W.2d 53 (Mo.1951); *Eddings v. Keller*, 400 S.W.2d 164 (Mo.1966); *Wilkins v. Cash Register Service Co.*, 518 S.W.2d 736 (Mo.App. 1975) and *Hawley v. Merritt*, 452 S.W.2d 604 (Mo.App.1970).

By the above ruling, the trial court, from that juncture forward, permitted a false issue to be injected and enlarged upon in the trial of this cause.

This was a case directly related to the question of severance damages, which is directly related to the taking of a portion of the land by plaintiff. If there was a decrease in value of the entire tract, Mrs. Sanders is to be adequately compensated. If there were no damages occasioned by the second taking, Mrs. Sanders would properly be denied any recoverable compensation, see *State ex rel. State Highway Commission v. Vesper*, 419 S.W.2d 469 (Mo.App. 1967) and *County of Bollinger v. Ladd*, 564 S.W.2d 267 (Mo.App.1978).

■ Mrs. Sanders' land had been separated into two parts, which was the result of the taking by the City of Kansas City, Missouri. Upon the taking in the present case, that land was again divided, this time from two to four parts. If upon the second taking the remainder of the land suffered damages, Mrs. Sanders was entitled to a fair and impartial determination of the nature and limit of damages as a result thereof.

With reference to and use of the transcript of the first condemnation proceedings, both in the taking of evidence and the referral to double damages by plaintiffs, counsel is shown, by the record, to have injected an issue not supported by the evidence. This constituted a prejudice against Mrs. Sanders upon her right to a fair and impartial hearing on the issue of damages. Misapplication of the facts and of the law in this manner before a jury is not permissible. *State ex rel. Kansas City Power & Light Co. v. Parma*, 467 S.W.2d 43 (Mo.1971).

In this case, the issue for the jury to determine was one of damages. The record reflects the jury award was within the limits of damages supported by the evidence as to the land actually taken only, and no award was made relative to severance damages. It was the right of the jury to have so concluded. The exception to this was the prejudice created by permitting the false issue of double damages to be presented to the jury.

The record herein reflects that plaintiff, through its cross-examination and argument, exceeded the evidence in this case upon the issue of damages. The record reveals that plaintiff, during the course of the trial, adopted the position that appellant Sanders sought double payment and was not entitled to recovery of any damages. Such a position was not supported by the evidence. Respondent, during the trial, equated the damages in the city condemnation case with those damages claimed due in the present proceedings. The record clearly shows such action was not in keeping with the evidence herein and was misleading to the jury. The result of such action was prejudicial as to Mrs. Sanders' right to a fair and impartial hearing upon the issue of damages.

Since the record clearly reveals the prejudicial effect of respondent's action, the jury verdict entered herein must be overturned.

This cause must be reversed and remanded for retrial for the reasons set forth herein. By such action, this court has sustained defendant's points one and three. In contemplation of the retrial of this cause, this court, in passing, comments upon point two raised by defendant to the extent that as

regards the testimony of expert witnesses in determining value, hearsay evidence utilized by such experts is found in the rule enunciated in *State ex rel. State Highway Commission v. Jasper*, 544 S.W.2d 554 (Mo. banc 1976).

All concur.