**Lee MOORE and Marie A. Moore, Plaintiffs-Appellants,**

v.

**Edith SMITH, Administratrix of the Estate of Carson Smith, Deceased, Defendant-Respondent.**

No. 43908.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 26, 1983.

Motion for Rehearing/Transfer to Supreme Court Denied Sept. 15, 1983.

Kenneth C. McManaman, O'Loughlin, O'Loughlin & McManaman, Cape Girardeau, for plaintiffs-appellants.

Stephen E. Strom, Cape Girardeau, for defendant-respondent.

SIMON, Judge.

Lee and Marie A. Moore (appellants), the parents of Greg Moore, deceased, appeal from a verdict in a jury trial in the Circuit Court of Cape Girardeau County. The jury found for Edith Smith (respondent), administratrix of the Estate of Carson Smith, her husband. Appellants' motion for a new trial was denied. Appellants' petition sought damages of $50,000 for an intentional assault with a deadly weapon, resulting in Greg Moore's death. Answering, the respondent denied the allegations and claimed self-defense.

Appellants allege the following errors: (1) the instruction on self-defense as given was deficient, in that, the required term "imminent" did not precede "great bodily harm"; (2) the trial court erred in submitting a self-defense instruction because Carson Smith was the aggressor, did not retreat upon opportunity to do so, was not shown to have been in apprehension of imminent great bodily harm or death and used excessive force against Greg Moore; (3) in his closing argument, counsel for respondent went beyond the scope of the issues and the evidence; (4) the trial court erred in its failure to grant a directed verdict or, in the alternative, a new trial, in that, the evidence was insufficient to support the verdict and the jury was improperly influenced by cumulative prejudicial errors in the trial. We affirm.

The Moores own a large farm known as Whitewater, the southern boundary of which abuts the Carson farm. The Carsons have lived on their farm for over twenty years. The Moores purchased their farm in 1975 and farmed it with the aid of three sons, Greg, Bruce and Kenneth. A standing dispute over the boundaries existed between the two families. The families had commissioned surveys of the area and consulted lawyers, but violence had never ensued.

On December 22, 1978, Lee Moore and his sons, Kenneth, Bruce and Greg, began clearing land on the southern boundary of Whitewater. Greg had a .357 magnum with an 8⅜ inch barrel in a holster on his right side which was clearly visible. Greg was a muscular twenty-one year old, about 5 foot 7 inches, weighing about 180 pounds. Between 1:00 p.m. and 1:30 p.m., Lee and Bruce, equipped with axes, cleared trees in the woods some distance away from where Kenneth was operating a bulldozer along the boundary line, guided by Greg, who was on the ground.

Carson, who was outside his home, heard the bulldozer and believed that the sound came from his brother Jess' barn. He told his wife, Edith, that he was going down to Jess' barn. After Edith reminded Carson that her daughter, Marie, was expected at 1:30 p.m., Carson replied that he would not be long. Carson, in good humor anticipating the arrival of the children, left his home at 1:15 p.m. in his three-quarter ton pick-up truck. He kept a .25 Colt automatic in his truck. Carson was a man in his sixties, about 6 foot 1 inch, weighing about 190 pounds.

In the boundary area, Kenneth and Greg had cleared between six and seven hundred feet when Kenneth noticed Carson approaching the area from the woods about one hundred feet away from the bulldozer, and was five feet from Greg when he came out of the woods into the cleared area. Kenneth, continuing to bulldoze slightly uphill from Carson and Greg, noticed a scuffle going on between Carson and Greg. Carson was on one knee with his left hand on the ground and his right arm and hand around Greg's legs. Greg was crouched down with one hand on Carson's back. Kenneth's attention was attracted to the scuffle by Greg's waving. When Kenneth reached the two, Carson's left hand was on a rock on the ground. Kenneth kicked Carson's left hand with his left foot. Carson continued to support himself by holding Greg's legs. Kenneth immediately kicked Carson's head which was positioned about two feet from the ground, facing downward. Carson then broke his hold on Greg's legs. Greg stood up and took one step

backward. Carson was also standing. They stood in a triangular position within four and one-half to five feet of one another. Carson asked, "Who are you?" Kenneth identified himself by name and said his father was Lee Moore. Carson then said, "You are here clearing a right of way on our property." Kenneth asked Carson if he had moved the survey stakes the Moores had placed in the area. Carson answered that he had moved them. The conversation continued for about one to one and one-half minutes. Blood was trickling down the left side of Carson's head. A lull developed in the conversation during which Carson placed his right hand in his coat pocket. Kenneth was standing slightly uphill from Greg, who stood slightly uphill from Carson. Carson drew a small gun from his pocket, lunged and, from a foot away, fired a shot at Greg and then one or two at Kenneth. Greg stepped backward three to four feet and Kenneth, turning to his left, ran down the hill, stumbled and fell between sixteen and eighteen feet from where Carson stood, when he fired at Greg. Greg drew his gun, pointed it at Carson, and fired four or five times. A neighbor testified he heard one report of a small caliber weapon, followed by three or more reports of a larger weapon. Since Carson had turned to fire at Kenneth, Carson's right side faced Greg when the shots from Greg's gun hit him. He fell to the ground. Greg ran toward Kenneth and, seeing that Greg had been injured, Kenneth made him sit down. Greg's gun fell toward Kenneth. Kenneth yelled loudly for his brother, Bruce, and his father, Lee. When Bruce and Lee came to Kenneth and Greg, Kenneth dispatched one of them to bring their pickup truck. Lee and Bruce accompanied the injured Greg in the back of the truck while Kenneth drove them to St. Francis Hospital. None of the Moores looked at Carson. According to the December 23, 1978 autopsy reports, Greg died from a massive internal hemorrhage caused by a gunshot wound to his right chest; numerous abrasions were on his body. Carson died from a gunshot wound

of the left chest; the autopsy revealed abrasions on his right knee, a three inch posterior midline scalp laceration and a gunshot wound of the palm of his right hand, which appeared to be a contact wound. A contact wound could result from the hand being placed over the muzzle of a gun.

Before sundown on the day of the shooting, sheriff's deputies arrived and photographed the area. Specifically, they photographed two different sites, both twelve to fifteen feet uphill from Carson's body, that lay about ten feet apart. One site photograph, in the direction of the bulldozer, contained blood spattered on a rock. The other site photograph showed blood spattered on a rock and leaves. The following day bulldozing commenced in the same area.

Appellants filed a petition against respondent for the wrongful death of Greg alleging Carson Smith had intentionally assaulted Greg Moore, causing his death. At trial, Kenneth Moore, the only eyewitness, testified. The trial court, over objection by appellants, instructed the jury on self-defense. The jury found for respondent.

First, appellants allege error in the self-defense instruction, which reads:

"Your verdict must be for defendant if you believe:

First, Carson Smith had reasonable cause to apprehend and did apprehend great bodily harm from Greg Moore, and

Second, Carson Smith did not create the situation which caused his apprehension, and

Third, Carson Smith's discharge of the .25 caliber pistol was in defense against this apprehended great bodily harm, and

Fourth, that Carson Smith used only such force as was reasonable and necessary."

█ The instruction tracks MAI 32.11.[1] Appellants contend that the self-defense in-

---

1. We note that Rule 70.02(d) was not complied    with, in that, instructions 2, 3, 4, 5, 6, 7, 8 and 9

struction should be modified to require the jury to find that Carson Smith had reasonable cause to apprehend and did apprehend "imminent" danger of death or great bodily harm. We disagree.

Appellants rely on *Martin v. Yeoham,* 419 S.W.2d 937 (Mo.App.1967); *Daggs v. St. Louis-San Francisco Ry. Co.,* 326 Mo. 555, 31 S.W.2d 769 (1930), but their reliance is misplaced. In *Martin* and *Daggs,* the problem was the failure to instruct as to "great" bodily harm. *Martin* is cited in the Committee's Comments to MAI 32.11 for the proposition that the act of self-defense must be commensurate with the apprehension of harm. *Daggs* is cited in the Committee's Comments for the proposition that the instruction should require a finding that the self-defense actor have "reasonable cause" for believing he is in danger. Our review of these cases substantiate the Committee's Comments, and the trial court did not err in submitting the instruction. Rule 70.02(b). Appellant's point is without merit.

Appellants also allege that, notwithstanding the error in the language of the self-defense instruction, the trial court erred in submitting the instruction because Carson Smith was the aggressor, did not retreat upon opportunity to do so, was not shown to have been in apprehension of imminent danger of death or great bodily harm, and used excessive force against Greg Moore. We disagree.

■ It is well established that if there is any substantial evidence putting self-defense in issue, the trial court should instruct on self-defense, whether or not the instruction is requested. *State v. Pride,* 567 S.W.2d 426, 430 (Mo.App.1978). Our review of the record indicates sufficient evidence supporting a self-defense instruction.

■ Thirdly, appellants allege that respondent's closing argument went beyond the scope of the issues involved and evidence admitted. Appellants did not object

did not contain the appropriate MAI notation nor did the legal file indicate who had tendered

to these remarks and thus did not preserve this point. *Blevins v. Cushman Motors,* 551 S.W.2d 602, 616 (Mo. banc 1977). In any event, the remarks did not result in manifest injustice or a miscarriage of justice. Rule 84.13(c); *Blevins,* at 616.

Finally, appellants contend the trial court erred in failing to: (1) direct a verdict for the appellants or, in the alternative, (2) grant a new trial because there was not substantial evidence to support the jury's verdict and the jury was influenced by prejudicial cumulative and plain error.

■ A directed verdict is proper for a plaintiff only where there are no genuine issues of fact and is seldom proper where proof is dependent upon oral testimony. *Parker v. Pine,* 617 S.W.2d 536, 541 (Mo. App.1981). Here, the proof is dependent upon oral testimony. Accordingly, we find the trial court correctly denied the motion for a directed verdict.

Judgment affirmed.

DOWD, P.J., and GEORGE F. GUNN, Jr., Special Judge, concur.