**MISSOURI PIPELINE COMPANY, Plaintiff–Appellant,**

v.

**Cornelia WILMES, Defendant–Respondent.**

No. 65269.

Missouri Court of Appeals, Eastern District, Division Three.

April 4, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 9, 1995.

Application to Transfer Denied June 20, 1995.

James F. Mauze, David T. Streett, St. Louis, for appellant.

Charles W. Niedner, St. Charles, for respondent.

DOWD, Judge.

The Missouri Pipeline Company (Plaintiff) condemned a portion of the property owned by Cornelia Wilmes (Defendant) for the purpose of constructing a pipeline. The jury awarded Defendant $45,000 in damages and Plaintiff appealed. We affirm.

Plaintiff is authorized by the Missouri Public Service Commission to operate as a public utility and to maintain a natural gas pipeline system. As a public utility, it is authorized to condemn real property and all interests therein for the construction, operation and maintenance of its natural gas pipeline transportation system. Plaintiff operated a 16-inch pipeline extending from Pike County south to St. Charles County. It planned to extend this pipeline from a point near Old Monroe in St. Charles south to Sullivan, Missouri. In order to do so, Plaintiff condemned a portion of Defendant's 109-acre property in St. Charles County.

On September 27, 1991, Plaintiff filed an Amended Petition in Condemnation. A condemnation hearing was held on October 7,

1991. Commissioners were appointed to assess the amount by which the taking lowered the value of Defendant's property. They awarded Defendant $14,600 in damages. Both sides filed exceptions to the Commissioners' award and demanded a jury trial. Prior to trial, Plaintiff was allowed to amend its petition by interlineation to limit the scope of the easement it condemned to the transportation of natural gas only. The sole issue at trial was the amount of damages Defendant should be awarded.

Defendant called four witnesses to give an estimate of the damages caused by the taking. Ralph Prinster, a real estate appraiser, testified the pipeline diminished the value of Defendant's property by $47,700. Both Bonnie Reller, Defendant's daughter, and Ken Reller, Defendant's son-in-law, testified the pipeline had lowered the value of Defendant's property by $1,000 an acre. Plaintiff moved to strike the Rellers' testimony, but the trial court denied this motion. Preston Bank, a certified real estate appraiser, also testified on Defendant's behalf. Bank had thirty years' experience as a real estate appraiser and was very familiar with the real estate in St. Charles County. He opined the pipeline had diminished the value of Defendant's property by 25%. Defendant also testified she was afraid of the pipeline and felt it had diminished the value of her property.

Albert Westover valued the property on Plaintiff's behalf. He stated the property was worth $341,000 immediately before the taking and $336,000 immediately after the taking, resulting in $5,400 in damages to the property.

The jury awarded Defendant $45,000 in damages, and the trial court entered judgment pursuant to the jury's verdict. Plaintiff appeals.

In Point I, Plaintiff alleges the trial court erred by allowing Defendant to produce evidence of the jury's verdict in a separate condemnation case in which Westover gave an appraisal. During direct examination, Plaintiff asked its expert if he had previously done appraisals in land condemnation cases. Westover named some of the people he had done appraisals for in the past, including Charles Niedner, Defendant's attorney. Plaintiff did not inquire any further, and the jury was left with the impression that Defendant's attorney had previously endorsed Westover's opinions.

During cross-examination, Defendant's counsel attempted to impeach Westover's testimony about his previous work for him as follows:

Q. Okay. You mentioned a couple of times early on in your testimony that you wouldn't—you had worked for various persons, including me, Mr. Niedner, you referred, I assume you mean me?

A. That's correct.

Q. And it's true isn't it that you have only worked for me one time?

A. Yes.

Q. All right. The time you worked for me was on the Boland case; is that correct?

A. Correct.

Q. And that's been, what, several years ago?

A. Yes, I would say two or three, probably three years ago.

Q. Okay. Have I ever hired you since then to do any work?

A. I don't know why not.

Q. Well, let's talk about that.

A. My value was too low. You won the case.

Westover admitted he valued the damages in that case at $230,000. Defendant then asked to read into evidence the jury verdict which awarded damages of $338,000. Plaintiff objected to the evidence as irrelevant and highly prejudicial. However, Defendant argued the jury's verdict could be used to impeach Westover's implication that Niedner endorsed his appraisals by showing he underestimated the damages in the case he worked on for Niedner by $108,000. The trial judge allowed him to read the verdict in the previous case after instructing the jury as follows: [1]

I am going to permit counsel to do this, however, I want to instruct the jury, that

---

1. Plaintiff told the trial judge he had no objection to admonishing the jury in this way.

this dollar amount does not pertain to any value of the property in question in the case now before the Court. But pertains to that particular case, only.

■ Plaintiff alleges the admission of this evidence constitutes reversible error because it violated its right to a fair and impartial trial and because it was an improper method of impeachment. First, to the extent this argument raises constitutional claims, it cannot be considered because these claims were raised for the first time on appeal. *S.L.J. v. R.J.*, 778 S.W.2d 239 (Mo.App.1989). Further, the evidence Defendant elicited during cross-examination of Westover was admissible to rebut and explain Westover's testimony about his relationship with Niedner. Although immaterial and irrelevant evidence may not be brought before the jury under the guise that it impeaches or discredits a witness, the trial court has discretion to determine what evidence is relevant, and its decision will not be overturned absent a showing of abuse of discretion. *Carlisle v. Kroger Co.*, 809 S.W.2d 23, 27[8–10] (Mo.App. 1991). In *Wailand v. Anheuser Busch Inc.*, 861 S.W.2d 710, 714[6] (Mo.App.1993), this court stated:

> A party who has conveyed information to a jury during opening statement or who has introduced evidence concerning a certain fact, may not on appeal complain that his opponent was allowed to introduce related evidence in rebuttal or explanation.

We find the evidence of the jury's verdict in the prior case was admissible to rebut Westover's direct examination testimony and his unresponsive cross-examination answers which raised the issue of Westover's and Niedner's relationship because Niedner, as Defendant's attorney, could not testify about his relationship with Westover. However, Plaintiff also argues Defendant exceeded the scope of permissible impeachment by assuming facts not in evidence according to *State v. Blue Ridge Baptist Temple*, 597 S.W.2d 236, 240 (Mo.App.1980). In *Blue Ridge*, the court permitted the plaintiff to use portions of the transcript from a prior condemnation case involving the same property to impeach a witness who had testified about damages in the prior case because the defendant/land-

owner was making the same damage claims she made in the prior case. The court prohibited any reference to specific dollar amounts. However, the court did permit plaintiff to question the witness about why the landowner brought a claim for damages if she had been paid in full for the damage to her property. *Id.* The court of appeals held, although plaintiff was entitled to impeach the witness, plaintiff exceeded that area by assuming facts not in evidence, that the landowner had been paid in full. *Id.* at 241[3]. This assumption injected the false issue of double damages into the case. *Id.*

This case is factually distinguishable. Here, the judge allowed evidence of the jury's verdict to impeach Westover's personal reference to his relationship with Niedner and instructed the jury that the dollar amount in that case did not pertain to the case at bar. This was a proper impeachment which did not assume facts not in evidence or inject false issues into the case. Point denied.

■ In Point II, Plaintiff argues the trial court erred in overruling its objection to the testimony of Ken and Bonnie Reller, Defendant's son-in-law and daughter. The Rellers were not allowed to testify to the value of the land under the exception made for landowners because they did not own legal title to the land. *See, State ex rel. Hwy. & Tr. Com'n v. Pracht*, 801 S.W.2d 90, 93[13] (Mo.App.1990). However, the trial court found they were qualified to testify as expert witnesses. On appeal, Plaintiff alleges the admission of the Rellers' testimony constitutes reversible error as neither was qualified to give an expert opinion. Plaintiff relies on a recent case from this court which held the trial court properly refused to let the landowner's son-in-law testify as an expert. *State ex rel. Hwy. & Tr. Com'n v. Kuhlmann*, 830 S.W.2d 569, 570[4, 5] (Mo. App.1992). However, that case relies on *State v. Bloomfield Tractor Sales, Inc.*, which held:

> One need not be an 'expert,' in the sense that word is ordinarily used, to testify as to the value of land. If the witness knows or has inspected the property, and if he has such information, knowledge, and skill

which enable him to form an intelligent judgment, and if this knowledge and information is superior to that possessed by the ordinary person who composes the jury, then he should be permitted to testify. Beyond that any deficiency he may have goes to the weight of his testimony, not to the qualification.

381 S.W.2d 20, 24[3] (Mo.App.1964). Unlike the son-in-law in *Kuhlmann*, the Rellers both held real estate licenses and each had been involved in a previous real estate transaction. Further, Bonnie Reller grew up on the land, and Ken Reller had farmed the land for the past 13 years. Because the Rellers had some qualifications, the trial court did not abuse its discretion in allowing them to testify as experts. *Donjon v. Black & Decker (U.S.), Inc.*, 825 S.W.2d 31, 33[4] (Mo.App. 1992). The extent of their experience and training goes to the weight of their testimony but does not render it incompetent. It is obvious the jury gave their value estimate little weight. *Id.* The ultimate decision about the qualifications of expert witnesses is left to the sound discretion of the trial judge and will not be set aside unless that discretion has been abused. *Highway & Transp. Com'n v. Wallach*, 826 S.W.2d 901, 903[4] (Mo.App.1992). We find no abuse of discretion.

■ Plaintiff also argues the trial court erred in failing to strike Ken Reller's valuation testimony because he valued the property as of the date of trial, not the date of the taking. This claim was not properly preserved for appeal. During cross-examination, Plaintiff's attorney questioned Ken Reller about the dates he used in doing his valuation and learned he was valuing the property as of the date of trial, not the date of the taking. However, Plaintiff's attorney only asked that Ken Reller's testimony be stricken on the grounds that:

[H]is testimony lacks foundation as to any opinion with respect to the value of the property or damage thereto, as a result of the alleged fear or as an expert in real estate, qualified to render an opinion as to value. The record reflects an absence of any substantive data or any of his statements on fear and he has not established—

counsel has not established a sufficient foundation for this Court to admit the testimony. I move that it be stricken on the basis that it's mere speculation, especially as to value.

This general objection to the lack of foundation was not sufficient to apprise the trial court of Plaintiff's objection to the date Ken Reller used in doing his valuations. *Pazdernik v. Decker*, 652 S.W.2d 319, 321[3] (Mo. App.1983). However, we find no prejudice resulted from Ken Reller's valuing the property as of the date of trial because his valuation was identical to that of Bonnie Reller, who valued the property as of the date of the taking. Point denied.

■ In Point III, Plaintiff objects to the expert testimony given by Preston Bank. It alleges, although Bank is a full-time real estate appraiser, he was not qualified to give his opinion in this case because he did not inspect the property and did not value the property before and after the condemnation. Bank has been a real estate appraiser for 30 years. He is familiar with the real estate in St. Charles County, including Defendant's property. In conjunction with this case, he viewed Defendant's property from the road and reviewed an enlarged map illustrating where the pipeline would cross the property. He stated he believed the pipeline would diminish the value of Defendant's property by 25%.

■ Plaintiff argues the trial court should have stricken Bank's testimony because it was speculative, and it did not use an appropriate measure of damages. When part of a tract of land is condemned, the appropriate measure of damage is the difference between the fair market value of the entire property before the taking and the fair market value after the taking. *State v. Modern Tractor and Supply Co.*, 839 S.W.2d 642, 648 (Mo.App.1992). An expert's opinion must be founded upon substantial information, not mere conjecture or speculation, and there must be a rational basis for the opinion. *Id.* Bank's opinion that, based on his review and his experience as a real estate appraiser in St. Charles County, Defendant's property was worth 25% less after the taking than before, met these requirements.

Plaintiff also alleges the trial court erred in permitting Defendant to argue in closing that all of the experts' valuations would be very close if Bank's 25% diminution figure were applied to the pre-taking values given by the other experts. Plaintiff did not raise any objection to this argument at trial. Therefore, this point is not preserved. *Moore v. Smith,* 657 S.W.2d 664, 667[4] (Mo. App.1983). However, we review for plain error and find none. Defendant's argument did not result in manifest injustice or a miscarriage of justice. Rule 84.13(c). Point denied.

In Point IV, Plaintiff alleges the trial court erred in failing to strike Defendant's testimony about her fear of the pipeline and in denying Plaintiff an opportunity to voir dire her prior to this testimony to determine whether her fear was based on actual experience or had a basis in reason. At trial, Defendant testified as follows:

Q: Okay. Are you afraid of this pipeline that's on your property?

A: Yes, I am very much scared of it.

MR. MAUZE: Objection, your Honor, I would like to renew for the record my prior motion.

THE COURT: Overruled.

Q: (By Mr. Niedner) Do you feel that the pipeline company's taking your property and putting a pipeline on it has damaged the value of your property?

A: Yes, I certainly do. I figured it has ruined it.

Plaintiff alleges this testimony was inadmissible because there was no basis in reason or experience for Defendant's fear. *See, Wood River Pipeline Co. v. Sommer,* 757 S.W.2d 265, 267[4] (Mo.App.1988); *Phillips Pipe Line Co. v. Ashley,* 605 S.W.2d 514, 517[1] (Mo.App.1980). In *Wood River Pipeline,* this court reaffirmed the test it announced in *Phillips Pipe Line* by stating:

In a condemnation case, any element of damage which results in a diminution of the market value of the land is a factor that must be considered in assessing damages. A condemnee should recover for any decrease in value resulting from any factor a willing purchaser would consider detrimental to the remaining property. Any risks that may result from the taking must be shown to be reasonably probable before they can be considered as proper elements *in computing the diminution in value* of the remainder. Since it is the fear caused by the risk which decreases the value of the land rather than the risk itself, that fear is properly considered if there is a basis in reason for it. In order to show the fear has a basis in reason or experience, the landowner must show an actual danger as basis for the fear, or that the fear is reasonable if not based on actual experience. (Citations omitted.) (Emphasis added.)

757 S.W.2d at 267–68[4–6].

Here, Defendant only stated she was afraid of the pipeline and believed it had diminished the value of her property; she did not testify to any specific amount of damages. The trial court properly found Defendant's testimony was not barred by the test used in *Wood River Pipeline* and *Phillips Pipe Line* because "those cases deal with situations where the witness went ahead to testify to specific damages, in dollar figures and amounts." Point denied.

In Point V, Plaintiff alleges the cumulative effect of all the trial court's errors mandates a new trial. Finding no trial court error, we also deny this point.

Judgment affirmed.

CRANE, P.J., and CRANDALL, J., concur.