

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
vs. ) No. SD38137
)
RICKY ARNOLD, ) **Filed: October 25, 2024**
)
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF CHRISTIAN COUNTY

The Honorable Laura J. Johnson, Judge

**<u>AFFIRMED</u>**

Ricky Arnold ("Arnold") appeals the judgment convicting him of the class E felony of resisting a lawful stop (Count I), and the class A felony of murder in the second degree (Count II) following a jury trial in the Circuit Court of Christian County, Missouri ("trial court"). *See* sections 575.150 and 565.021, respectively.[1] In two points relied on, Arnold claims the trial court erred and abused its discretion in admitting the opinion testimony of a state trooper that Arnold "exited for the purpose of preventing the stop by fleeing" because that was the ultimate issue reserved for the jury to decide (Point I) and

---

[1] All references to sections 575.150 and 565.021 are to RSMo 2016, including, as applicable, statutory changes effective January 1, 2017.

the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence to show he was operating a motor vehicle "at a high speed" so as to create a substantial risk of serious physical injury or death (Point II). Finding no merit to either point, the trial court's judgment is affirmed.

**Factual Background and Procedural History**

On June 9, 2022, Missouri State Highway Patrol Trooper Justin Dedmon ("Trooper Dedmon") was driving eastbound on Highway 60 when he observed a black Cadillac, driven by Arnold, driving westbound at 90 miles per hour. The speed limit in that area was 65 miles per hour. Trooper Dedmon cut through the median, activated his lights and sirens, and began to follow the black Cadillac in an effort to stop Arnold for speeding. While he was attempting to stop Arnold on Highway 60, Trooper Dedmon was traveling as fast as 108 miles per hour and closing the distance between the Cadillac and himself. During his pursuit, several other vehicles on the highway yielded to Trooper Dedmon.

Arnold then exited the highway onto Cravens Road, and Trooper Dedmon followed. Cravens Road is a county road that begins paved, but turns to gravel approximately one mile away from Highway 60. Cars do not usually exit there as there is "nothing" at the Cravens Road exit. The speed limit on Cravens Road is 55 miles per hour on the paved portion, and 50 miles per hour on the gravel portion. Shortly before the road turns to gravel, there is a sharp 90-degree left turn where the suggested speed limit is 35 miles per hour, at which point the road becomes a narrow, one lane 10-foot wide gravel road that is not well maintained or commonly used.

2

As Trooper Dedmon pursued the Cadillac, he informed the troop that he had a "vehicle trying to take off" on him and he believed the vehicle was trying to "elude the traffic stop." Trooper Dedmon was traveling at speeds of 90 to 100 miles per hour on the paved portion of Cravens Road in pursuit of Arnold. Upon the transition to the gravel portion of Cravens Road, Trooper Dedmon was traveling at about 60 miles per hour. While on the gravel, Arnold began to run off the left side of the roadway, overcorrected, ran off the right side of the roadway, struck an embankment, became airborne, overturned, and hit a tree. The event data recorder in Arnold's car recorded Arnold traveling at 58 miles per hour between 1 and 0.5 seconds before the crash.[2]

When he came upon the accident, Trooper Dedmon quickly exited his patrol car and jumped into the brush to reach the Cadillac. He found Arnold sitting in the driver's seat. After talking with Arnold for 30 seconds to a minute, he learned there was a passenger in the car. It was evident to Trooper Dedmon that the passenger, Arnold's girlfriend of five years ("Victim"), was deceased. Trooper Dedmon asked Arnold, "Why were you running?" After Trooper Dedmon got Arnold out of the car, Arnold asked him, "[w]hy was [sic] you chasing me?" to which Trooper Dedmon responded, "[b]ecause you was [sic] speeding."

---

[2] An event data recorder ("EDR") is "a device installed in a motor vehicle to record technical vehicle and occupant information for a brief period of time (seconds, not minutes) before, during, and after a crash." *Event Data Recorder*, National Highway Traffic Safety Administration, https://www.nhtsa.gov/research-data/event-data-recorder#overview-10516 (last visited Oct. 22, 2024). The EDR in Arnold's car recorded 2.5 seconds prior to the event, and was accessed and evaluated by a state trooper.

Arnold was charged by a first amended felony information with resisting a lawful stop (Count I) and felony murder in the second degree (Count II). The case proceeded to jury trial on May 1, 2023.

At trial, Trooper Dedmon testified that Cravens Road was "basically a one lane" road and that if "[y]ou meet another vehicle, you're going to have to pull over"; he further stated that on gravel roads, "you begin to fishtail" at high speeds and steering gets "loose." Trooper Dedmon testified that he had five years of experience as a state trooper, and that he had previously worked in Henry County, Benton County, and Lee's Summit, and that he currently works in Wright County and Texas County. During this time, he was required to go through extensive training and follow a "pursuit policy[,]" which "gives . . . descriptions and orders on how to conduct a pursuit, [and] when to conduct a pursuit." Trooper Dedmon testified to completing approximately 80 to 100 vehicle stops per month, approximately five of which are pursuits. Additionally, Trooper Dedmon indicated that it was not typical for vehicles to exit the highway when being stopped. While testifying, the prosecutor asked Trooper Dedmon if he "believe[d] [his] pursuit was beginning [when the Cadillac turned onto Cravens Road,]" to which Trooper Dedmon responded, "Yes, at that time I believed the vehicle was trying to elude the traffic stop."

Also at trial, Missouri State Highway Patrol Trooper Brian Gruben ("Trooper Gruben"), a crash reconstructionist, testified that once a vehicle is on top of loose gravel on the sides of the road, the gravel will "start rolling with the tire" and make it difficult to stick to the road. Trooper Gruben stated that, like in inclement weather, a driver must reduce their speed accordingly on a gravel road "or they're going to crash." He further

4

explained that the drag factor[3] was reduced due to the gravel, and that it was a "driver's responsibility to adequately reduce [their] speed." Trooper Gruben testified that, based on his investigation of the crash, the "driver was operating the vehicle too fast to maintain control of it for the roadway conditions at the time" and that in such operation, the driver was "putting himself and his passenger at risk." During trial, the parties stipulated that Victim "died because of her injuries she sustained as a result of the motor vehicle collision on June 9, 2022," and the stipulation was read to the jury.

The jury found Arnold guilty of the class E felony of resisting a lawful stop and of the class A felony of murder in the second degree. The trial court sentenced Arnold to four years' imprisonment for resisting a lawful stop and 19 years' imprisonment for felony murder in the second degree, each sentence to be served consecutively to the other. This timely appeal follows.

**Discussion**

Point I

In his first point on appeal, Arnold claims the trial court erred and abused its discretion in admitting Trooper Dedmon's testimony that Arnold exited the highway onto Cravens Road to avoid a traffic stop for speeding because the testimony was improper speculation opinion and was the ultimate issue for the jury to decide. We disagree.

Standard of Review

We review a trial court's failure to exclude evidence at trial for an abuse of discretion. *State v. Riston*, 677 S.W.3d 888, 892 (Mo. App. S.D. 2023) (citing *State v.*

---

[3] According to Trooper Gruben's testimony, drag factor "is the frictional value of any type of surface[.]" In layman's terms, it is the "stickiness of the surface."

*Brandolese*, 601 S.W.3d 519, 533 (Mo. banc 2020)). "A circuit court has broad discretion to admit or exclude evidence at trial." *State v. Minor*, 648 S.W.3d 721, 733 (Mo. banc 2022). Abuse of discretion occurs only when a ruling is "clearly against the logic and circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration[.]" *Brandolese*, 601 S.W.3d at 533 (quoting *State v. Brown*, 939 S.W.2d 882, 883-84 (Mo. banc 1997)). We review the trial court's ruling "for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial"; an error is prejudicial if there is a reasonable probability that the error affected the outcome. *Id.* at 533-34 (quoting *State v. Zink*, 181 S.W.3d 66, 73 (Mo. banc 2005)).

Analysis

Trooper Dedmon testified at trial that when he first started to gain speed after turning into the median he hit 108 miles per hour. He testified he was driving so fast to catch up to Arnold and, in the beginning, he was closing the distance. The State then asked:

> [State:] Okay. Who turned onto Cravens Road?
> [Dedmon:] The black Cadillac.
> [State:] What did you do?
> [Dedmon:] That's when I exited onto Cravens Road and then I let troop know that I had a vehicle trying to take off on me.
> [State:] Did you believe your pursuit was beginning at that time?
> [Dedmon:] Yes, at that time I believed the vehicle was trying to elude the traffic stop.

Arnold's counsel did not object to this testimony.

Later, the State asked Trooper Dedmon what he was thinking when Arnold left Highway 60 by exiting onto Cravens Road and Arnold's counsel objected that the question "calls for speculation." The trial court overruled the objection, the State

6

rephrased the question, and Trooper Dedmon again testified, "[a]t that time when I see him exit on Cravens, I believed he was attempting to avoid the traffic stop."

> [State:]  Have you stopped numerous people on Highway 60?
> [Dedmon:]  Yes.
> [State:]  Do they typically exit the road like that?
> [Dedmon:]  No.
> [State:]  When they exit the road, what are you thinking is occurring?
> [Arnold's Counsel:]  Your Honor, calls for speculation.
> [State:]  I think it goes to his state of mind, Your Honor. I think he should be able to testify as to what he believes is occurring and to show what he did next.
> [The Court:]  I'll overrule the objection and allow it for that purpose.
> [Dedmon:]  Can you rephrase?
> [State:]  What do you believe is occurring when people leave the road?
> [Dedmon:]  At that time when I see him exit on Cravens, I believed he was attempting to avoid the traffic stop.

Here, Arnold cannot establish reversible error because Arnold's counsel failed to object to the exact same testimony they now complain of when it came into evidence earlier in direct examination.  "An objection to testimony must be made at the earliest possible opportunity to allow the trial court to invoke remedial remedies."  ***State v. Blurton***, 484 S.W.3d 758, 774 (Mo. banc 2016).  "[A]dmission of testimony over objection is not reversible error if similar questions have previously been asked and answered without objection."  ***Id.*** at 775.  Even if a proper objection was preserved, Arnold cannot establish he was prejudiced here since "[a] complaining party is not entitled to assert prejudice if the challenged evidence is cumulative to other related admitted evidence."  ***Brandolese***, 601 S.W.3d at 536 (quoting ***Saint Louis Univ. v. Geary***, 321 S.W.3d 282, 292 (Mo. banc 2009)).

Moreover, even if the objection was asserted at the earliest opportunity, "an objection is ordinarily adequate only if it is made with sufficient specificity to inform the trial court why the objector claims the challenged evidence should be excluded."  ***Carter***

***v. St. John's Reg'l Med. Ctr.***, 88 S.W.3d 1, 18-19 (Mo. App. S.D. 2002).  Specificity in objections ensures trial judges know the reasons for an objection so that they can make "informed and wise rulings on the objection" and allow the parties to take any corrective action before the case is submitted to the jury.  ***Id.*** at 19.

> "In applying the 'specificity' rule, Missouri appellate courts have ruled that general objections such as 'lacks a foundation,' 'irrelevant,' 'calls for speculation,' 'is self serving,' and the like, are not sufficiently specific objections." *See, e.g. Missouri Pipeline Co. v. Wilmes*, 898 S.W.2d 682, 687 (Mo.App. [E.D.] 1995) (holding "lack of foundation" too general); *Blount v. Peipers*, 864 S.W.2d 392, 393[3] (Mo.App. [E.D.] 1993) (holding bare objection on grounds of "irrelevancy without explaining why the evidence was irrelevant [ ]" too general to preserve error); *Meadows v. Kinser*, 603 S.W.2d 624, 626 [4] (Mo.App. [S.D.] 1980) (holding objection that proffered exhibit was "self-serving instrument" was neither a sufficiently specific objection nor did it contain proper ground for excluding evidence).

***Id.***

Applying the "specificity" rule here, the objection "calls for speculation" made by Arnold's counsel failed to inform the trial court how, in the context of the record then before the court, the State's question to Dedmon "calls for speculation."  As such, the objection was too general to preserve the alleged error in the admissibility of the evidence for our review.

Even if the issue was properly preserved for our review, Trooper Dedmon was not speculating as he knew exactly what he was thinking at that time – the actual question that was asked.[4]  In his reply brief, Arnold improperly attempts to morph the question and answer to constitute an accusation that the trial court erred "in overruling

---

[4] Speculate is defined as "to take to be true on the basis of insufficient evidence."  *Speculate*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/speculate (last visited Oct. 24, 2024).

'Defendant's objection to Trooper Dedmon speculating to *Ricky Arnold's* frame of mind.'" (Emphasis added). Because Trooper Dedmon was asked about what *he* was thinking, not about what *Arnold* was thinking, the circuit court did not err, let alone plainly err, in overruling the objection. Point I fails and is denied.

## Point II

In his second point on appeal, Arnold argues the trial court erred in denying his motion for judgment of acquittal at the close of all evidence because there was insufficient evidence for a reasonable juror to find that Arnold operated a motor vehicle "at a high speed" to have created a substantial risk of serious physical injury or death which was required to find Arnold guilty for the class E felony of resisting a lawful stop. Again, we disagree.

## Standard of Review

"Appellate review of sufficiency of the evidence is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt." **State v. Soliben**, 621 S.W.3d 585, 589 (Mo. App. S.D. 2021) (quoting **State v. Lammers**, 479 S.W.3d 624, 632 (Mo. banc 2016)). This Court does not assess whether we believe the evidence at trial established guilt beyond a reasonable doubt, but rather whether any reasonable fact-finder could have found the essential elements of the crime beyond a reasonable doubt. **State v. Nash**, 339 S.W.3d 500, 509 (Mo. banc 2011). We view all evidence and reasonable inferences derived therefrom in a light most favorable to the verdict, disregarding any contrary evidence and inferences, and defer to the jurors' superior position to weigh the evidence and determine witness credibility. **State v. Lopez-McCurdy**, 266 S.W.3d 874,

9

876 (Mo. App. S.D. 2008). "Circumstantial rather than direct evidence of a fact is sufficient to support a verdict." **State v. Dillbeck**, 654 S.W.3d 393, 400 (Mo. App. S.D. 2022) (quoting **State v. Lehman**, 617 S.W.3d 843, 847 (Mo. banc 2021)).

Analysis

> A person commits the offense of resisting or interfering with . . . detention, or stop if he or she knows or reasonably should know that a law enforcement officer is . . . attempting to lawfully detain or stop an individual or vehicle, and for the purpose of preventing the officer from effecting the . . . stop or detention, he or she:
> (1) Resists the . . . stop or detention of such person by . . . fleeing from such officer[.]

Section 575.150.1.

> The offense of resisting an arrest, detention or stop in violation of subdivision (1) or (2) of subsection 1 of this section is a class A misdemeanor, unless the person fleeing creates a substantial risk of serious physical injury or death to any person, in which case it is a class E felony.

Section 575.150.5.

Here, Arnold does not argue that he was not fleeing from Trooper Dedmon; instead, he argues that the error lies in the jury's finding that Arnold was operating a motor vehicle at a high speed so as to create a substantial risk of serious physical injury or death. Arnold points to Paragraph 7 of Instruction 7, which, to find Arnold guilty of Count I (resisting a lawful stop), required the jury to find beyond a reasonable doubt that:

> [D]efendant fled in such a manner that created a substantial risk of serious physical injury or death to a person . . . by operating a motor vehicle on a narrow road with blind corners at a high speed[.]

Arnold argues that because he was going 58 miles per hour at the time of the accident, he was not traveling at such a high speed to create a substantial risk of serious physical injury or death in that the speed limit on the gravel road was 50 miles per hour.

10

Here, there is sufficient evidence for a reasonable juror to conclude that Arnold was driving the motor vehicle at such high speeds so as to create a substantial risk of serious physical injury or death. The dashcam recording of the pursuit, alongside Trooper Dedmon's testimony, shows Trooper Dedmon reaching speeds of 108 miles per hour in order to pursue Arnold on Highway 60. After turning onto the paved portion of Cravens Road, where the speed limit was 55 miles per hour, Trooper Dedmon was traveling between 90 and 100 miles per hour. Upon reaching the gravel, where the speed limit is 50 miles per hour, Trooper Dedmon testified that he was traveling between 58 to 60 miles per hour without braking.

While Arnold was only going eight miles over the speed limit on Cravens Road, Trooper Dedmon testified that the area where the accident occurred was narrow and not well maintained, and drivers will "fishtail" and lose control of steering at high speeds on gravel. Additionally, Trooper Gruben, the crash reconstructionist, testified that vehicles are required to navigate the area of Cravens Road upon which the accident occurred "[v]ery, very carefully at a low speed." Trooper Gruben stated that while speed limits are posted, there are some places where it is unsafe to drive the speed limit due to the drag factor becoming reduced by the gravel, and it was the driver's responsibility to adequately reduce his speed to safely travel through the area. In his expert opinion, Trooper Gruben testified that Arnold was required to slow down while driving on the gravel portion of Craven Road.

This Court does not consider the reliability of a witness; instead, we are limited to determining whether there was substantial evidence to sustain a guilty verdict. *State v. Edwards*, 365 S.W.3d 240, 250 (Mo. App. W.D. 2012) (citing *State v. Londagin*, 102

11

S.W.3d 46, 52 (Mo. App. S.D. 2003)).  It is for the jury to decide reliability and credibility of a witness.  *Id.*  "[I]t is within the jury's province to believe all, some, or none of any witness's testimony in arriving at a verdict."  *State v. Vaughn*, 32 S.W.3d 798, 799 (Mo. App. S.D. 2000) (citing *State v. Davis*, 903 S.W.2d 930, 934 (Mo. App. W.D. 1995)).  Further, a "fact finder is permitted to draw such reasonable inferences from the evidence as the evidence will permit."  *State v. Bracy*, 670 S.W.3d 159, 166-67 (Mo. App. E.D. 2023) (citing *Dillbeck*, 654 S.W.3d at 401).

Given the troopers' testimonies, the jury could reasonably infer that eight miles over the speed limit constituted a "high speed" for the gravel road due to the narrow, unkept nature of the road and given that Arnold lost control of the vehicle, causing the car to leave the road, hit an embankment, and flip over.  This, coupled with the resulting death of Victim, could lead a reasonable jury to find Arnold was driving at such a high speed so as to create a substantial risk of serious physical injury or death.  Thus, it was reasonable for the jury to find Arnold guilty of the class E felony resisting a lawful stop.  Point II is denied.

The trial court's judgment is affirmed.

JENNIFER R. GROWCOCK, C.J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

JACK A. L. GOODMAN, J. – CONCURS